UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 APR 11  PM 4: 32

DEPUTY CLERK

| | |
|---|---|
| AMY AUDSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:10-cv-208 |
| | ) |
| RBS CITIZENS, N.A. d/b/a CITIZENS BANK, | ) |
| RADIOSHACK CORPORATION, and | ) |
| FREDERICK FARWELL, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**
(Docs. 7, 19 & 20)

Plaintiff, Amy Audsley, brings this civil action against Defendants, RBS Citizens

N.A. d/b/a Citizens Bank ("Citizens"), RadioShack Corporation ("RadioShack"), and

Frederick Farwell, alleging intentional interference with a contractual relationship,

negligent supervision, invasion of privacy, and constructive discharge. Presently before

the court are Mr. Farwell's motion to dismiss for lack of personal jurisdiction under Fed.

R. Civ. P. 12(b)(2) (Doc. 20) and Citizens' and RadioShack's motions to dismiss for

failure to state a claim under Fed. R. Civ. P. 12(b)(6) (respectively, Docs. 19 & 7).

The court heard oral argument on these motions on January 5, 2011. Ms. Audsley is

represented by Karl C. Anderson, Esq. Citizens is represented by Tavian M. Mayer, Esq.

RadioShack is represented by Andrew H. Maass, Esq. Mr. Farwell is represented by

John J. Kennelly, Esq.

## I. Factual Background.

This case arises out of Ms. Audsley's 2009 departure from her position as a

RadioShack store manager in West Lebanon, New Hampshire, where she had been

employed for the previous nineteen years.

On July 22, 2008, Ms. Audsley applied for a loan from Citizens so that she could purchase a coffee shop in West Woodstock, Vermont where she resides. As part of the loan application process, Ms. Audsley hand-delivered paperwork to a Citizens bank branch in West Lebanon, where Frederick Farwell served as branch manager. Mr. Farwell personally took Ms. Audsley's paperwork so that it could be faxed to Citizens' underwriting department. Mr. Farwell inquired about the purpose of the loan, and Ms. Audsley informed him that she intended to purchase a coffee shop in Woodstock, Vermont, and operate it as an investment property while she continued to work at RadioShack. Ms. Audsley asked Mr. Farwell to keep this information confidential. Prior to his position at Citizens, Mr. Farwell had been employed by RadioShack as the West Lebanon store manager.

Thereafter, Ms. Audsley and her fiancé formed a Vermont corporation to operate the Woodstock coffee shop. In November 2008, they completed their purchase of the coffee shop, and in late January 2009, they opened for business.

During the third week of January 2009, the new regional director for RadioShack made an unannounced visit to the West Lebanon store that Ms. Audsley was managing. According to Ms. Audsley, the regional director conducted a "white glove" inspection of the store, and made what Ms. Audsley alleges were "unreasonable demands" in the presence of both customers and other RadioShack employees. This confrontation added to the work-related stress that Ms. Audsley was already experiencing, as RadioShack had recently refused to assist Ms. Audsley with insubordinate employees who were verbally abusive and physically violent while in the store.

On February 6, 2009, Ms. Audsley's district manager called her and asked about the Woodstock coffee shop and whether it would interfere with her duties as store manager at RadioShack. Ms. Audsley informed him that it would not interfere, explaining that she had also owned and operated an inn out of her home for the previous nine years which had not hindered her ability to work for RadioShack. When asked by

2

Ms. Audsley, RadioShack's district manager stated that he could not reveal the source from whom he acquired information regarding the Woodstock coffee shop.

Less than two weeks later, on February 18, 2009, Ms. Audsley learned that her regional manager was interviewing Mr. Farwell that night at a McDonald's restaurant in West Lebanon. She alleges that "during the course of arranging for and conducting interview(s) with RadioShack staff," Mr. Farwell "divulged confidential information that he gained by virtue of his position as a manager at [Citizens] and made other statements about [her] that were false or cast her in a false light in an effort to secure a position with RadioShack as the manager of the West Lebanon branch." (Doc. 2 ¶ 21.) This information included Ms. Audsley's purchase of the Woodstock coffee shop.

RadioShack eventually hired Mr. Farwell as the assistant manager of its West Lebanon store, and later promoted him to store manager of another store. Ms. Audsley alleges that this event caused her severe emotional distress, rendering her unable to return to work at RadioShack. When Ms. Audsley could not return to work, Mr. Farwell took over Ms. Audsley's position as the West Lebanon store manager.

Ms. Audsley filed an Amended Complaint on September 3, 2010, alleging four claims: (1) intentional interference with a contractual relationship against Mr. Farwell; (2) negligent supervision against Citizens; (3) invasion of privacy against Citizens and Mr. Farwell; and (4) constructive discharge against RadioShack. She seeks compensatory and punitive damages, as well as attorney's fees and costs.

## II. Analysis and Conclusions of Law.

### A. Mr. Farwell's Rule 12(b)(2) Motion to Dismiss.

Mr. Farwell argues that this court lacks personal jurisdiction over him because he is not a resident of, and has no other contacts with, Vermont, and none of the alleged conduct of which Ms. Audsley complains occurred in Vermont. Under Fed. R. Civ. P. 12(b)(2), the court must dismiss claims brought against a defendant over which it lacks personal jurisdiction.

3

On a 12(b)(2) motion to dismiss, the plaintiff bears the burden of demonstrating contacts with the forum state that are sufficient to give the court jurisdiction over the person of the defendant. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Prior to discovery, the plaintiff need only make a *prima facie* showing that jurisdiction exists, and this "remains true notwithstanding a controverting presentation by the moving party." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). Moreover, "in the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to the plaintiff," and all inferences are drawn in the plaintiff's favor. *Hoffritz*, 763 F.2d at 57.

To determine whether this court may exercise personal jurisdiction over Mr. Farwell, "the court must look first to the long-arm statute of the forum state, in this instance, [Vermont]." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (citing *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *King*, 126 F.3d at 27.

"Vermont's long-arm statute, 12 V.S.A. § 913(b), confers jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Dall v. Kaylor*, 163 Vt. 274, 275 (1995). Accordingly, this court need only examine "whether the exercise of . . . jurisdiction comports with federal due process. To do so, [the court] undertake[s] an analysis consisting of two components: the 'minimum contacts' test and 'the reasonableness' inquiry." *Bank Brussels Lambert*, 305 F.3d 120, 127 (2d Cir. 2002); *see also Dall*, 163 Vt. at 275.

In determining whether a defendant has made the necessary "minimum contacts" with the forum state, the court must first distinguish between "specific" and "general" jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). "Specific jurisdiction exists when 'a [s]tate exercises personal jurisdiction over a

4

defendant in a suit arising out of or related to the defendant's contacts with the forum,'"
while general jurisdiction "is based on the defendant's general . . . contacts . . . and
permits a court to exercise its power in a case where the subject matter of the suit is
unrelated to those contacts." *Id.* at 567-68 (quoting *Helicopteros Nacionales de
Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984)).  Courts impose a "more
stringent" minimum contacts test for general jurisdiction, requiring the plaintiff to show
that the "defendants' general business contacts with Vermont were continuous,
systematic and of a sufficiently substantial nature as to permit a Vermont court to
entertain a cause of action." *Bechard v. Constanzo*, 810 F. Supp. 579, 583-84 (D. Vt.
1992); *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952).  To be
sufficient, these contacts must be the result of intentional and affirmative action by the
defendant himself. *Id.* at 585.

Ms. Audsley argues that Mr. Farwell's "continuous and systematic" contacts with
Vermont are sufficient to support general jurisdiction, and that specific jurisdiction exists
because her causes of action against Mr. Farwell arise out of his Vermont contacts.

### 1. General Jurisdiction.

Since Ms. Audsley has sued Mr. Farwell in his individual capacity, he is subject to
the general jurisdiction of Vermont's courts only if his own contacts with Vermont are
sufficiently continuous and systematic. *See In re Terrorist Attacks on Sept. 11, 2001*,
2010 WL 3783702, at *5 (S.D.N.Y. Sept. 13, 2010).  The fact that a RadioShack store
Mr. Farwell manages may have certain contacts with other stores located in Vermont, or
is part of what RadioShack has termed its "Vermont District," is thus not relevant to the
minimum contacts determination.

When the inquiry is focused on Mr. Farwell's own contacts with Vermont, it is
clear that Ms. Audsley has not established a *prima facie* case of general jurisdiction.  In
his affidavit, Mr. Farwell asserts that he has lived in New Hampshire for the past thirty-
eight years and has been employed there for the last twenty-two years.  He has never
owned property in Vermont, and has never conducted business there.  His only visits to

5

Vermont were "casual visits on personal matters." (Doc. 20-1 at 1.) The only personal contact with Vermont alleged by Ms. Audsley is that Mr. Farwell once attended a training session in Barre, Vermont, and on another occasion attended a party at Ms. Audsley's home in West Woodstock, Vermont. Such sporadic and infrequent contact is neither continuous nor systematic, and therefore does not establish general jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *see also Bechard*, 810 F. Supp. at 585 ("for purposes of conferring general jurisdiction, a nonresident defendant must actively pursue business connections in the forum").

### 2. Specific Jurisdiction.

Ms. Audsley contends that this court has specific personal jurisdiction over Mr. Farwell because he "purposefully directed" his unlawful conduct at an individual he knew was a Vermont resident, knowing that any harm she suffered would be suffered in Vermont. She further alleges that Mr. Farwell willingly entangled himself in her plans to acquire a Vermont coffee shop, allegedly using confidential information regarding her Vermont-based plans to his advantage. As a result, Ms. Audsley left her New Hampshire job, became unemployed in Vermont, and suffered an invasion of privacy, loss of employment, and emotional distress in Vermont as well as in New Hampshire. All of this was allegedly foreseeable by Mr. Farwell as he had been to Ms. Audsley's home in Vermont, had access to her loan application for a business in Vermont, knew that the confidential information he allegedly disclosed was directly related to Ms. Audsley's activities in Vermont, and knew that any consequences of his allegedly tortious activity would be felt in that state. Based upon these facts, Ms. Audsley alleges that Mr. Farwell expressly aimed his tortious activity towards Vermont, with the intent of injuring a Vermont resident there. Mr. Farwell counters "[t]his is not a special jurisdiction case." (Doc. 20 at 4). He does not brief the issue further.

Where, as here, the plaintiff has alleged intentional torts, "minimum contacts" for purposes of specific jurisdiction may exist "when a defendant has 'purposefully directed' the harmful effects of his activities at the forum State," and the litigation results from

6

alleged injuries that arise from or relate to those activities. *LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

Construing the operative facts in the light most favorable to Ms. Audsley, the court finds she has made a *prima facie* showing of "minimum contacts" sufficient for purposes of specific jurisdiction to withstand a pre-discovery, non-evidentiary motion to dismiss. *See Hoffritz*, 763 F.2d at 57; *see also Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction."). In particular, the court notes that Ms. Audsley has alleged that Mr. Farwell committed intentional torts directed towards her as a person and towards her business activities, that the torts, themselves, involved her Vermont activities and included a Vermont-based loan application from an individual Mr. Farwell knew to be from Vermont, and that Mr. Farwell had knowledge that the brunt of Ms. Audsley's emotional, reputational, employment, and privacy-related injuries would be felt in Vermont. *See Calder*, 465 U.S. at 789, 791 (specific jurisdiction will be found where activities outside the forum were not "mere untargeted negligence" but rather were "calculated to cause injury to respondent in California[.]").[1]  Ms. Audsley has thus established that Mr. Farwell could reasonably anticipate being haled into a Vermont court based upon his conduct in New Hampshire. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474 (citation omitted).

---

[1] *See also Tamburo v. Dworkin*, 601 F.3d 693, 707 (7th Cir. 2010) ("Tortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy *Calder*'s express-aiming requirement."); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (finding "actions that 'are performed for the very purpose of having their consequences felt in the forum state' are more than sufficient to support a finding of purposeful direction under *Calder*[.]") (citation omitted); *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) ("the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum" means that the tortfeasor "cannot now claim surprise at being haled into court [t]here."); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("'[E]xpress aiming' . . . requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.").

Having found the requisite "minimum contacts," the court turns to whether asserting personal jurisdiction over Mr. Farwell comports with "'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case.'" *Bank Brussels Lambert*, 305 F.3d at 129 (quoting *Metro. Life*, 84 F.3d at 568 and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, the burden lies with Mr. Farwell to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert*, 305 F.3d at 129 (citations omitted).

> Courts are to consider five factors in evaluating reasonableness: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."

*Id.*

Mr. Farwell alleges that it will be a burden for him to litigate this case in Vermont but he identifies no facts to support that claim. *See Bank Brussels Lambert*, 305 F.3d at 129-30 ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because "the conveniences of modern communication and transportation ease that which would have been a serious burden only a few decades ago.'") (citation omitted).

With regard to the second factor, Mr. Farwell asserts that "the State of Vermont has absolutely no interest in adjudicating this matter save only the fact that the Plaintiff is a resident of Vermont." (Doc. 20 at 6.) Courts, however, have recognized that a state has an interest in providing a forum for its citizens who have been injured by the intentional acts of nonresidents. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 24 (2d Cir. 1988). In addition, "Vermont has an important interest in protecting its citizens' . . . business interests." *Real Good Toys, Inc. v. XL Machine Ltd.*, 163 F. Supp. 2d 421, 425 (D. Vt. 2001).

Mr. Farwell concedes that it will be more convenient for Ms. Audsley to litigate in Vermont, her home state and the forum in which she chose to file her lawsuit. He contends, however, that the witnesses and evidence are primarily located in New Hampshire and New Hampshire law is likely to apply. In light of the proximity of Vermont to New Hampshire and Ms. Audsley's status as a key witness, the court concludes that this factor weighs only slightly against personal jurisdiction, and any inconvenience to the New Hampshire witnesses is *de minimus*.

Finally, the parties have not identified any substantive social policies that would be furthered or hindered by litigating this case in Vermont as opposed to some other forum. As a result, this factor does not favor either party.

Considering the totality of the factors, the court finds that Mr. Farwell has not made a "compelling case" that subjecting him to the jurisdiction of Vermont's courts would be unreasonable. Mr. Farwell's motion to dismiss for lack of personal jurisdiction is therefore DENIED.

### B. Citizens' and RadioShack's Rule 12(b)(6) Motions to Dismiss.

Fed. R. Civ. P. 8(a)(2) states that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss. 129 S. Ct. at 1950. First, a

9

court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50. However, this assumption of truth does not apply to legal conclusions, and thus "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 1. Ms. Audsley's Negligent Supervision Claim Against Citizens.

Ms. Audsley alleges that Citizens owed her a duty as a consumer and a customer to ensure that Mr. Farwell complied with common law and federal privacy laws. She alleges that Citizens failed to properly train and/or supervise Mr. Farwell and thus did not "prevent him from divulging confidential information that he gained by virtue of his position as a bank employee in order to benefit himself to the detriment of the customer." (Doc. 2 ¶ 31.) Ms. Audsley alleges that Citizens' failure to supervise and train Mr. Farwell resulted in the wrongful disclosure of private information which caused her damages. She contends that Mr. Farwell's knowledge of the contents of her loan application, and his subsequent installation as her replacement at the West Lebanon RadioShack store, constitute sufficient evidence of the chain of events to cross the line from sheer speculation to a reasonable inference that Mr. Farwell disclosed the contents of her loan application to RadioShack.

Citizens seeks dismissal of the negligent supervision claim, arguing that Ms. Audsley does not allege sufficient facts to show that her claim for relief is plausible. In addition, it contends that Mr. Farwell cannot be deemed its agent because he "repudiated his contract and his relationship with the Bank based upon the actions taken by him as

10

they were entirely adverse to any interest of the Bank." (Doc. 28 at 3.)  Finally, it points out that, at this juncture, Ms. Audsley cannot prove that Mr. Farwell divulged information to RadioShack regarding her loan application, and thus her claim is mere supposition.

New Hampshire [2] has adopted § 213 of the Restatement (Second) of Agency and permits a direct action for negligent hiring, training, and supervision against an employer because of the misconduct of its employee:

> "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; [or]
>
> (c) in the supervision of activity[.]"

*Cutter v. Town of Farmington*, 126 N.H. 836, 840-41, 498 A.2d 316, 320 (1985) (citation omitted).  The New Hampshire Supreme Court has emphasized that this is not a claim of vicarious liability.  *See Cutter*, 126 N.H. at 840, 498 A.2d at 320 ("The basis of a claim of negligent employment or supervision brought against an employer where the employee harms a third party, is *not* vicarious liability, on the contrary, such a claim can encompass direct liability as a result of the misconduct of the employee.") (internal citations omitted).  Moreover, "[t]he employer's duty to exercise reasonable care to control its employee may extend to activities performed outside the scope of employment." *Trahan-Laroche v. Lockheed Sanders, Inc.*, 139 N.H. 483, 486, 657 A.2d 417, 419 (1995) (citing Restatement (Second) of Torts § 317 (1965)).  An employer may therefore be liable if, "under the circumstances, the employer has not taken the care which a prudent

---

[2] For purposes of the motion to dismiss, the parties have briefed the relevant issues as if New Hampshire law governs Ms. Audsley's claims against Citizens.

man would take in selecting the person for the business at hand," *see Restatement (Second) of Agency* § 213, cmt.d., or in providing appropriate instructions and supervision in light of the risk of harm to others. *Id.* at cmt.d.

Here, Ms. Audsley alleges that Citizens was negligent both in training and supervising Mr. Farwell whom it empowered to receive confidential, private information that might be disclosed or otherwise used to the detriment of its customers. Assuming her factual allegations to be true, it is reasonable to infer—and therefore plausible under *Iqbal* and *Twombley*—that Citizens could have prevented Mr. Farwell's allegedly wrongful dissemination of Ms. Audsley's information through adequate training and supervision. Pre-discovery, Ms. Audsley cannot be expected to know what training or supervision, if any, Citizens provided to Mr. Farwell. Moreover, whether such training and supervision were reasonable under the circumstances, and whether her injuries were foreseeable have long been held to be question of facts. *See Priest v. Boston & M.R.R.*, 71 N.H. 114, 114, 51 A. 667, 667 (1901) ("The question of reasonableness is a question of fact[ ]" as is whether defendants should have "foreseen the injury to plaintiff[.]") (citation omitted).

Analyzing the alleged facts in the light most favorable to Ms. Audsley, the court finds she has alleged a plausible claim of negligent supervision sufficient to survive a pre-discovery motion to dismiss. *See Trahan-Laroche*, 139 N.H. at 486, 657 A.2d at 419 (reversing and remanding trial court's grant of motion to dismiss as plaintiffs' "allegation and the reasonable inferences therefrom raise a jury issue as to whether the defendant negligently supervised [its employee]."). Accordingly, Citizens' motion to dismiss Ms. Audsley's claim for negligent supervision is DENIED.

### 2.  Ms. Audsley's Invasion of Privacy Claim Against Citizens.

Ms. Audsley alleges that Citizens is vicariously liable for Mr. Farwell's unlawful dissemination of Ms. Audsley's private information to RadioShack. More specifically, she alleges that Citizens failed to properly train and supervise Mr. Farwell and placed him in a position in which he could acquire confidential information about her for his

12

own personal gain. She asserts that Mr. Farwell, acting as Citizens' agent, had reason to know that by divulging her confidential information, and by making statements about her that were false, he would offend both her and a person of reasonable sensibilities in her position and would falsely convey the impression that the Woodstock coffee shop would "interfere with her ability to operate her store." (Doc. 2 at 3.) She identifies RadioShack's District Manager as a person to whom she believes Mr. Farwell disclosed her confidential bank loan information, and more vaguely states that she also "received a series of phone calls and text messages from other store managers[.]" (Doc. 2 at 3.)

In seeking dismissal of Ms. Audsley's invasion of privacy claim, Citizens argues that Ms. Audsley has failed to adequately plead a claim for invasion of privacy. Even assuming that she has, Citizens further asserts that it cannot be held vicariously liable for Mr. Farwell's conduct because Ms. Audsley unequivocally alleges that Mr. Farwell acted both outside the scope of his employment with Citizens, and solely for his own benefit.

### a. Invasion of Privacy.

With regard to Ms. Audsley's invasion of privacy claim, Citizens contends that the Amended Complaint is not sufficiently specific regarding how Ms. Audsley was allegedly placed in a false light, what the other false statements consisted of, and to whom other than RadioShack employees the allegedly false information was disseminated. Citizens concedes that "public disclosure of private facts" and "publicity which places the plaintiff in a false light in the public eye" are recognized grounds for an invasion of privacy claim under New Hampshire law. *See Hamberger v. Eastman*, 106 N.H. 107, 110, 206 A.2d 239, 241 (1964). It, however, argues that Ms. Audsley has failed to demonstrate "publicity" for a false light claim, and cannot prove that her loan application contained private facts because the Woodstock coffee shop was a matter of public knowledge once Ms. Audsley formed a Vermont corporation to operate it.

Ms. Audsley need not prove her claim in her pleadings. Instead, she must allege sufficient facts to state an invasion of privacy claim that is plausible on its face, *Iqbal*,

129 S. Ct. 1949, and which provides Citizens sufficient notice of her invasion of privacy claim to defend against it. These requirements have been satisfied.

### b. Vicarious Liability.

The issue of vicarious liability, however, presents a much closer question. "Under the doctrine of *respondeat superior*, an employer may be held vicariously responsible for the tortious acts of an employee committed incidental to or during the scope of employment." *Trahan-Laroche*, 139 N.H. at 485, 657 A.2d at 419. An employee's conduct falls within the scope of his or her employment if: "(a) it is of the kind he or she is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." *Pierson v. Hubbard*, 147 N.H. 760, 766, 802 A.2d 1162, 1167 (2002) (citing Restatement (Second) of Agency § 228 (1958)).

As Citizens correctly points out, Ms. Audsley's invasion of privacy claim is based entirely on Mr. Farwell's alleged *dissemination* to RadioShack of information pertaining to her plans to purchase the Woodstock coffee shop. This was not conduct that Mr. Farwell was employed to perform. *See Porter v. City of Manchester*, 155 N.H. 149, 155, 921 A.2d 393, 400 (2007) ("The first element of the respondeat superior test is used to determine whether conduct is within the scope of employment. It requires that the conduct be 'of the kind [ ]he is employed to perform.'") (citation omitted). Moreover, Ms. Audsley does not allege that Mr. Farwell's alleged dissemination of her confidential information took place during "authorized time and space limits," or that it was done, at least in part, to serve Citizens. To the contrary, she repeatedly alleges that this activity was outside the scope of Mr. Farwell's employment, and that the alleged dissemination of her confidential information occurred for Mr. Farwell's sole benefit and private gain and did not, in any respect, benefit Citizens. "Conduct not actuated at least in part by a purpose to serve the employer will be outside the scope of employment." *Porter*, 155 N.H. at 155, 921 A.2d at 399. Courts thus recognize that where it is undisputed that an agent acted for his own benefit, and did not thereby confer any possible benefit upon his

14

employer, vicarious liability will not lie because of the "adverse interests" exception. *See, e.g., Mann v. Adventure Quest, Inc.*, 2009 VT 38, ¶¶ 12-13, 186 Vt. 14, 20-21, 974 A.2d 607, 612; *Kirschner v. KPMG LLP*, 590 F.3d 186, 191-92 (2d Cir. 2009). Here, there are simply no allegations that Mr. Farwell disseminated Ms. Audsley's private information in the course of his employment at Citizens, at least in part for Citizens' benefit.

Because Ms. Audsley has failed to allege the essential elements of vicarious liability for her invasion of privacy against Citizens, Citizens' motion to dismiss that claim is GRANTED.

**C.  Ms. Audsley's Constructive Discharge Claim Against RadioShack.**

Ms. Audsley's sole claim against RadioShack is for wrongful termination under a theory of constructive discharge. She alleges that the "actions of Radio[S]hack in failing to take adequate steps to support and protect [her] in dealing with insubordinate employees, in introducing additional and unreasonable pressure on her through the new Regional Manager, through interviewing, hiring and promoting Defendant Farwell in spite of its knowledge of his actions towards [Ms. Audsley] all rendered [her] working conditions so difficult and intolerable" that she was effectively forced to resign." (Doc. 2 ¶ 41.) In moving to dismiss this claim, RadioShack argues that Ms. Audsley has not alleged sufficient facts to support a plausible claim of wrongful termination.

Under New Hampshire law,[3] a claim for wrongful discharge contains two elements: (1) the termination of employment was motivated by bad faith, retaliation, or malice; and (2) the plaintiff was terminated for performing an act that public policy would encourage, or for refusing to do something that public policy would condemn. *See Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 248, 910 A.2d 1262, 1265 (2006).

The first element is satisfied "when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to

---

[3] Although RadioShack cites Vermont law in support of its motion to dismiss, it is undisputed that RadioShack employed Ms. Audsley in New Hampshire. The court thus addresses the issue as one of New Hampshire law.

resign." *Id.* This is not established by "'[r]relatively minor abuse of an employee[;] . . . rather, the adverse working conditions must generally be ongoing, repetitive, pervasive, and severe.'" *Id.* at 249, 910 A.2d at 1265 (quoting *Porter v. City of Manchester*, 151 N.H. 30, 42, 849 A.2d 103, 117 (2004)).

In support of her claim that she was constructively discharged, Ms. Audsley alleges that (1) RadioShack did not provide sufficient support when Ms. Audsley complained that other employees were verbally abusive and physically violent in the store; (2) RadioShack interviewed and re-hired Mr. Farwell despite knowing that Mr. Farwell had disclosed private, confidential information about Ms. Audsley; and (3) RadioShack sent a regional director to its West Lebanon store who conducted a "white glove" inspection of the store and made unreasonable (but unspecified) demands of Ms. Audsley in front of customers and other employees.[4]  Although not replete with facts, these allegations are not "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, but rather are allegations that are "reasonably susceptible of a construction that would permit recovery." *Karch v. BayBank FSB*, 147 N.H. 525, 535, 794 A.2d 763, 774 (2002); *see also Porter v. City of Manchester*, 151 N.H. 30, 42, 849 A.2d 103, 117 (2004) (holding a combination of veiled threats of termination and physical intimidation was "sufficient to prove the elements of a constructive discharge claim." ); *Lacasse*, 154 N.H. at 250, 910 A.2d at 1266 ("Because we cannot say as a matter of law that no reasonable person in plaintiff's position would feel compelled to resign . . . we reverse the grant of summary judgment on the claim of wrongful discharge.").

With regard to RadioShack's intent in creating these allegedly intolerable working conditions, Rule 8's pleading requirement "does not require 'detailed factual allegations,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555), and pre-

---

[4] In response to RadioShack's motion, Ms. Audsley suggests that RadioShack may have endeavored to force her resignation because she was paid more than other store managers, and because she filed a worker's compensation claim during the late winter of 2009. These facts are not set forth in the Amended Complaint and therefore will not be considered.

discovery evidence of intent is likely to be limited.  *See, e.g., Rosen v. Brookhaven Capital Mgmt. Co., Ltd.*, 113 F. Supp. 2d 615, 631-32 (S.D.N.Y. 2000) (denying motion to dismiss and permitting discovery as to the subjective intent of a particular defendant). Accordingly, although the Amended Complaint is not particularly detailed, it contains sufficient facts to plead the first prong of a constructive discharge claim under New Hampshire law.

The second element of constructive discharge, whether a plaintiff was terminated in contravention of public policy, is also satisfied.  A determination of what constitutes a violation of public policy typically "calls for the type of multifaceted balancing process that is properly left to the jury in most instances." *Cloutier v. Great Atl. & Pac. Tea Co., Inc.*, 121 N.H. 915, 924, 436 A.2d 1140, 1145 (1981) (finding public policy violated where employer failed to provide a safe work environment and where employee was responsible for deposits even on days off).[5]

Here, Ms. Audsley alleges that she was exposed to violence and abusive behavior in her work environment, that a regional director made unreasonable demands of her in front of her staff and customers and forced her to forego her vacation, and that her confidential banking information was used to not only support her ouster from long term employment, but used to hire the person who allegedly leaked her confidential information as her replacement.  When viewed in the light most favorable to Ms. Audsley, these allegations are sufficient to state a plausible claim that Ms. Audsley's discharge was in violation of public policy.

---

[5] The New Hampshire Supreme Court has nonetheless recognized that once the factual record is developed, whether there has been a violation of public policy may sometimes be determined as a matter of law. *See Short v. School Administrative Unit No. 16*, 136 N.H. 76, 85, 612 A.2d 364, 370 (1992) ("Although ordinarily the issue of whether a public policy exists is a question for the jury, at times the presence or absence of such a public policy is so clear that a court may rule on its existence as a matter of law."); *see also Burr v. Melville Corp.*, 868 F. Supp. 359, 366 (D. Me. 1994) (applying New Hampshire law and finding that summary judgment was warranted because "[e]ven if [plaintiff] were able to show that [defendant] acted with malice, there is no evidence in this record to suggest that a contravention of public policy was implicated in [plaintiff's] termination.").

Because Ms. Audsley has alleged a plausible claim of constructive discharge, RadioShack's motion to dismiss is hereby DENIED.

**III.   Conclusion.**

For the reasons set forth above, Mr. Farwell's motion to dismiss (Doc. 20) is DENIED, Citizens' motion to dismiss (Doc. 19) is GRANTED in part and DENIED in part, and RadioShack's motion to dismiss (Doc. 7) is DENIED. SO ORDERED.

Dated at Burlington, in the District of Vermont, this _4th_ day of April, 2011.

Christina Reiss, Chief Judge
United States District Court

18